IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ESTATE OF JOVAN SINGLETON,** *by Personal Representative Jon Singlton*, <br><br> *Plaintiff*, <br><br> v. <br><br> **LIEUTENANT GREGORY MEAD,**[1] <br><br> *Defendant*. | Civil No.: 1:24-cv-02942-JRR |

**MEMORANDUM OPINION**

Pending before the court is Defendant Lieutenant Gregory Mead's Motion to Dismiss Second Amended Complaint or for Summary Judgment (ECF No. 22; the "Motion").[2] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be denied.

**I.   BACKGROUND**[3]

Plaintiff the Estate of Jovan Singleton, through personal representative Jon Singleton, Decedent Singleton's father, filed this action against Defendant Lieutenant Gregory Mead for claims arising from Defendant Mead's alleged use of excessive force that resulted in Decedent Singleton's death. On October 11, 2021, Baltimore Couty Police Department received a call regarding an incident at a 7-Eleven store located at 6571 Windsor Mill Road. (ECF No. 21 ¶ 7.) While driving toward the scene of an accident, Defendant Mead was scanning intersections and streets, "looking for potential suspects." *Id.* ¶ 10 (citation modified). Defendant Mead saw

---

[1] Defendant identifies the correct spelling of his name is "Gregory Mead." (ECF No. 22-1 at p. 1 n.1.) Madam Clerk shall update the docket accordingly.
[2] In view of the filing of the Second Amended Complaint, the court will deny as moot Defendant's Motion to Dismiss First Amended Complaint or for Summary Judgment at ECF No. 11.
[3] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Second Amended Complaint. (ECF No. 21.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Decedent Singleton, who he believed matched the description of a suspect involved in the 7-Eleven incident. *Id.* ¶ 11. Defendant Mead directed Decedent Singleton to stop. *Id.* ¶ 12. Although Decedent Singleton initially stopped in response to the command, he then "began to run from the scene." *Id.* "At all times relevant to this action, Decedent Singleton was oriented facing away from Defendant Mead[] and running on foot. At no point did Decedent Singleton stop, engage Defendant Mead[] in any fashion, and/or otherwise act in an overtly threatening manner towards Defendant Mead[]." *Id.* ¶ 14.

While pursuing Decedent Singleton on foot, Defendant Mead "lost his footing and stumbled." (ECF No. 21 ¶ 15.) "Defendant Mead[], who was running with his gun drawn, fell and then commenced firing upon Decedent Singleton. Defendant Mead[] discharged eight or more 9-mm rounds at Decedent Singleton. At the time of the shooting, Decedent Singleton remained oriented away from [Defendant Mead]." *Id.* ¶ 16. Decedent Singleton suffered a "[g]unshot wound to the torso" and died as a result. *Id.* ¶¶ 17–18. Decedent Singlton's body was not located until about five hours after the shooting. *Id.* ¶ 19. According to Plaintiff, "Defendant Mead[]'s use of lethal force under the circumstances was unreasonable," as he had "no basis for using lethal force at all." *Id.* ¶ 20.

Plaintiff initiated this action on October 9, 2024. (ECF No. 1.) Plaintiff's operative Second Amended Complaint (ECF No. 21) asserts two counts: Deprivation of Rights under 42 U.S.C. § 1983—Fourth and Fourteenth Amendments (Count I);[4] and Deprivation of Rights under the

---

[4] Based on Plaintiff's Second Amended Complaint, Defendant's Motion, and Plaintiff's response in opposition to the Motion, the court is unable to discern if Plaintiff's reference to the Fourteenth Amendment is to note its role in making the Fourth Amendment applicable to the states, *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961), or to assert a claim of violation of substantive due process. Because Defendant does not advance argument as to such, the court constrains its analysis accordingly. However, the court does note the Supreme Court's holding in *Graham v. Connor* that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." 490 U.S. 386, 388 (1989); *see Caraway v. City of Pineville*, 111 F.4th 369, 377 n.7 (4th Cir. 2024) (noting that "[t]he district court appropriately declined to consider

corresponding Articles of the Maryland Declaration of Rights (Count II).[5] *Id.* ¶¶ 26–34. Plaintiff seeks, *inter alia*, actual, compensatory, consequential, and punitive damages. *Id.* at p. 7.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(d)

Defendant brings his Motion as a motion to dismiss or, alternatively, for summary judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same). "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and

---

[the plaintiff's] Fourteenth Amendment excessive force claim based on the Supreme Court's decision in *Graham v. Connor*").

[5] Plaintiff does not identify which specific articles of the Maryland Declaration of Rights he seeks to invoke. The court's analysis herein will refer to Article 26 of the Maryland Declaration of Rights which is read "*in pari materia* with the Fourth Amendment." *Washington v. State*, 482 Md. 395, 408 (2022).

'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)). Even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)). The nonmovant may not, however, "demand discovery for discovery's

sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

Here, based on its title, the court construes Defendant's Motion to seek dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56.  In support of his request for summary judgment, Defendant asks this court to consider two pieces of evidence outside the pleadings—a report concerning the incident by the Maryland Office of the Attorney General's Independent Investigations Division,[6] and an affidavit from Defendant Mead (ECF No. 6-2).  While this case has been pending since 2024, it remains in its infancy, as discovery has not yet commenced.  Further, Plaintiff, through counsel (Anton L. Iamele, Esquire), submits a Rule 56(d) affidavit (ECF No. 16-1) challenging Defendant's proffered evidence and attesting that discovery is needed for myriad reasons, including, *inter alia*, to probe Defendant Mead's credibility through deposition; examination of the available physical and forensic evidence with respect to the gunshot trajectory, gunshot residue, and scene reconstruction; and to identify and depose eyewitnesses.  (ECF No. 23 at p. 6.)  The court agrees that such discovery would tend to bear on material facts that may well, at a minimum, generate a triable issue hinging on witness credibility and "is likely to facilitate the disposition of the action." *Sammons*, 606 F. Supp. 3d at 193, *supra*.  The court therefore declines to convert Defendant's Motion and will resolve it per the standard applicable to a Rule 12(b)(6) challenge.[7]

---

[6] INDEP. INVESTIGATIONS DIV. OF THE MD. OFF. OF THE ATT'Y GEN., REPORT CONCERNING THE POLICE-INVOLVED FATAL INCIDENT IN BALTIMORE COUNTY, MARYLAND ON OCTOBER 11, 2021 (2022), https://oag.maryland.gov/resources-info/Documents/pdfs/IID/042522_IID_Report.pdf.

[7] For completeness, in the event Defendant mistakenly titled his motion as one for dismissal or summary judgment (as opposed to one for dismissal and summary judgment) and instead moves solely for summary judgment as to one or more of the asserted arguments, the court's analysis remains the same.  Summary judgement is not proper here where

5

B.  **Federal Rule of Civil Procedure 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint.  A court may consider documents attached to a motion to dismiss if the documents are "integral to and explicitly relied on in the complaint and [if] the

---

discovery has not commenced, Plaintiff identifies discovery necessary to oppose the Motion, and Plaintiff challenges Defendant's offered evidence.

plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (emphasis in original) (quoting *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011)). Defendant has not argued, and the court does not find, that the evidence he relies upon—the Attorney General report and his own affidavit—is integral to or explicitly relied upon by Plaintiff in the Second Amended Complaint. And Defendant advances no argument that such evidence may be considered in ruling on his Rule 12(b)(6) arguments. Accordingly, because the court declines to convert the pending motion, it will not consider the referenced/attached exhibits.

### III. <u>ANALYSIS</u>

In his Motion, Defendant moves to dismiss (or for summary judgment, as discussed above) Plaintiff's federal and state constitutional claims because his use of force was reasonable as a matter of law. (ECF No. 22-1 at pp. 4–8.) Even if his use of force was not reasonable as a matter of law, Defendant urges he is nonetheless entitled to qualified immunity because no caselaw clearly established his actions violated Decedent Singleton's rights based on the facts at issue. Defendant also seeks to limit Plaintiff's damages sought under Count II. *Id.* pp. 8–12.

#### A. Plaintiff's Claims Under the Fourth Amendment and Article 26 of the Maryland Declaration of Rights

Plaintiff's claim of excessive force is grounded in the Fourth Amendment to the United States Constitution. *Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person," is "properly analyzed under the Fourth

Amendment's 'objective reasonableness' standard"). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.  It is made applicable to the States through the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  Relatedly, Article 26 of the Maryland Declaration of Rights provides that "all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive."  MD. CONST. DECL. OF RTS. ART. 26. Article 26 is read "*in pari materia* with the Fourth Amendment." *Washington v. State*, 482 Md. 395, 408 (2022).  The court thus analyzes them together.

Plaintiff asserts a violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred," including, relevant here, the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)).  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under section 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

As stated above, a "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person' . . . [is] properly analyzed

under the Fourth Amendment's 'objective reasonableness' standard.'" *Graham*, 490 U.S. at 388.

On the reasonableness standard, the Fourth Circuit has explained:

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979). But the Court has counseled that the test "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Smith v. Ray,* 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham,* 490 U.S. at 396).

*Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016); *see Graham*, 490 U.S. at 396 ("Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.").

Thus, three factors guide the court's balancing of a plaintiff's Fourth Amendment interests, including: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (same). "And in the Fourth Circuit, we consider a fourth factor—'the extent of the plaintiff's injuries.'" *Nazario v. Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024) (quoting *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019)).

Courts "assess the objective reasonableness of an officer's use of deadly force 'based on the totality of the circumstances,' 'and based on the information available to the [officer] immediately prior to and at the very moment [he] fired the fatal shots.'" *Aleman v. City of Charlotte*, 80 F.4th 264, 285 (4th Cir. 2023) (quoting *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 582 (4th Cir. 2017). "[T]he 'reasonableness' inquiry in an excessive force case is an

objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

"Because deadly force is extraordinarily intrusive, it takes a lot for it to be reasonable." *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Even still, "a 'significant threat of death or serious physical injury' to an officer does not justify the use of deadly force unless the threat is 'immediate.'" *Williams*, 917 F.3d at 769 (quoting *Garner*, 471 U.S. at 3, 11). Indeed, "[a] police officer who shoots a fleeing suspect without 'probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' violates that suspect's Fourth Amendment rights." *Henry v. Purnell*, 652 F.3d 524, 531–32 (4th Cir. 2011) (quoting *Garner*, 471 U.S. at 3). As the Supreme Court long ago declared in *Garner*:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

471 U.S. at 11; *see Cooper v. Doyle*, 163 F.4th 64, 81 (4th Cir. 2025) (discussing same).[8]

In view of the foregoing, the court considers whether Plaintiff's allegations (accepted as true) support that Defendant's use of deadly force was reasonable as a matter of law. *See Graham*, 490 U.S. at 396, *supra* (discussing the factors to consider). The answer is plainly no. The allegations do not support that the "incident" at 7-Eleven was "severe." *See id.* Regardless, even assuming Defendant believed at the time that he was in pursuit of a suspect of a felony offense, Plaintiff's allegations plainly state that Decedent Singleton did not pose an immediate threat to the safety of Defendant or others where he was running away, and "oriented facing away," from Defendant, and he never stopped, engaged, or otherwise acted in an overtly threatening manner toward Defendant. (ECF No. 21 ¶¶ 13–14.) *See Henry*, 652 F.3d at 531–32, *supra*. As Decedent Singleton is alleged to have been running away from Defendant at the time of the incident, in the absence of an immediate threat to the safety of others, Supreme Court precedent forecloses justification of deadly force. *See Garner*, 471 U.S. at 11 ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape."). Finally, considering the "extent of [Decedent Singleton's] injuries," the most grave of injuries has occurred—his death. *See Nazario*, 103 F.4th at 234. In support of his argument, Defendant relies on cases that turn on material facts not at issue here according to Plaintiff's allegations. Plaintiff does not allege, and indeed expressly denies, that Decedent Singleton threatened or shot at Defendant. (ECF No. 22-1 at pp. 7–8.) On a 12(b)(6) motion, the court cabins its view to the allegations.

---

[8] Further, while not plainly relevant to the alleged facts here, "the failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person makes some sort of furtive or other threatening movement with the weapon . . . ." *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022).

Accordingly, Plaintiff plausibly alleges a violation of his Fourth Amendment right under the U.S. Constitution and his right under Article 26 of the Maryland Declaration of Rights. The court will therefore deny the Motion to the extent it seeks dismissal of Counts I and II on that basis.

### B. Qualified Immunity

Defendant further urges that, even if the court finds Plaintiff's allegations sufficient to support the claim that his use of force was unreasonable, Plaintiff's Count I under section 1983 nonetheless fails because Defendant is entitled to qualified immunity. (ECF No. 22-1 at pp. 8–11.)

A government official sued in his individual capacity may invoke the protection afforded by qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Whether an officer is entitled to qualified immunity under section 1983 turns on two prongs: "(1) whether the facts illustrate that the officer violated the plaintiff's constitutional right to be free from unreasonable seizures, and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)); *see D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (discussing same). "The answer

to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Humbert*, 866 F.3d at 555.  The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."  *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation."  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow*, 457 U.S. at 817).  Accordingly, while "qualified immunity typically is best addressed at the summary judgment stage after the facts have been developed through discovery," *Riddick v. Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) (citations omitted), dismissal pursuant to Rule 12(b)(6) is nevertheless appropriate "when the face of the complaint clearly reveals the existence of a meritorious" qualified immunity defense.  *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir. 2011)).  If the court determines that an officer took action that a reasonable officer would have believed was lawful, the officer is entitled to dismissal before discovery.  *See Anderson*, 483 U.S. at 646 n.6, *supra*.  Importantly, however, "when asserted at this early stage in the proceedings, 'the [qualified immunity] defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Atty's. Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Because the court has already concluded that Plaintiff plausibly alleges that Defendant violated Decedent Singleton's Fourth Amendment right, the court's consideration of Defendant's qualified immunity defense turns on the second prong—whether the right was clearly established at the time of the alleged event.  "For a constitutional right to be clearly established, its contours

13

'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640). "The unlawfulness of an official's conduct must be 'apparent in light of pre-existing law.'" *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) (quoting *Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The court applies an "objective standard," thus analyzing "this prong from the perspective of a reasonable officer." *deWet v. Rollyson*, 157 F.4th 344, 349 (4th Cir. 2025) (quoting *Lewis v. Caraballo*, 98 F.4th 521, 534 (4th Cir. 2024)).

To determine whether a right is clearly established, the court first looks to "the appropriate level of specificity," and then to "cases of controlling authority in this jurisdiction . . . to determine whether a reasonable official would be on notice that his actions violate the law." *Id.* (first quoting *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020); then quoting *Franklin v. City of Charlotte*, 64 F.4th 519, 534 (4th Cir. 2023)). The precedent need not concern the "exact conduct at issue," *see Merch v. Bauer*, 677 F.3d 656, 665–66 (4th Cir. 2012), or be "directly on point," *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021), for a right to be clearly established. Instead, "the existing authority must be such that the unlawfulness of the conduct is manifest." *Merch*, 677 F.3d at 665–66 (quoting *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998)). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas*, 595 U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Consistent with the practice detailed above, the court considers with specificity the right asserted and controlling precedent based on the facts as alleged and the relevant statutory scheme.

14

As the caselaw discussed above makes abundantly clear, a reasonable officer would have known that use of deadly force against Decedent Singleton while he ran away and posed no threat to Defendant, which is to say shooting him in the back, violated Decedent Singleton's Fourth Amendment right. *See Hope*, 536 U.S. at 739, *supra*. Defendant's argument on this point is again unavailing because it neglects Plaintiff's allegations and instead relies upon his own assertion of facts (some of which directly contradict Plaintiff's allegations). Indeed, Defendant's argument is as follows:

> Here, there was no case law that would have placed Lt. Mead on notice that, in this specific factual situation—an armed robbery suspect had fired on him—firing back as in self-defense would have been a violation of any federal right. On the contrary, based on the case law cited above, it would have been clear to any officer in Lt. Mead's position that firing back in self-defense in an obviously dangerous situation was constitutional.

(ECF No. 22-1 at pp. 9–10.) This argument rests on facts either not alleged in the Second Amended Complaint or that materially contrast with same.

Accordingly, Defendant has not shown that the face of Plaintiff's Second Amended Complaint "'clearly reveals the existence of a meritorious' qualified immunity defense." *See Occupy Columbia*, 738 F.3d at 116, *supra*. The court will deny the Motion to the extent it seeks dismissal of Count I on that basis.

### C. Available Damages under Count II

Finally, Defendant challenges the relief Plaintiff seeks pursuant to Count II under Maryland law, relying on *Jones v. Flood*, 118 Md. App. 217 (1997), *aff'd,* 351 Md. 120 (1998). In *Jones*, the Appellate Court of Maryland explained that, "[i]n a survival action, the personal representative may bring suit to recover for pain and suffering sustained by the decedent between the time of injury and death." *Id.* at 223. Thus, "damages in survival actions are 'limited to the damages that

would have been recoverable by the decedent had he survived, *i.e.,* appropriate compensation for the time between injury and death,'" whereas "[d]amages in wrongful death actions . . . compensate persons who are damaged because of the decedent's death." *Id.* at 224 (citations omitted); *see Johnson v. Golden*, No. 939, Sept. Term,2019, 2020 WL 3412935, at *7 (Md. Ct. Spec. App. June 22, 2020) (discussing same). Accordingly, "[i]n a survival action, the personal representative of the victim may sue to recover, for the estate of the victim, damages for the economic and non-economic losses suffered by the victim prior to his or her death—the damages that the victim would have been able to recover had he or she survived." *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 670 (D. Md. 2021) (citing *Smith v. Borello*, 370 Md. 227, 233 (2002)). The parties appear to be in agreement on this point. Plaintiff clarifies that these are the exact types of damages sought here, "including conscious pain and suffering, [and] mental anguish prior to death." (ECF No. 23 at p. 8–9.) Defendant thus seeks an order dismissing Count II "to the extent it seeks any damages due to Jovan Singleton's death, such as loss of future earnings or damages based on the pecuniary value of the decedent's life." (ECF No. 22-1 at p. 12.)

The court is not persuaded that dismissal of any count in part is warranted for multiple reasons. First, Plaintiff's claims for damages underlie both claims, not simply the state law claim in Count II. Second, while caselaw is not uniform on this front, it does support the principle that a Rule 12(b)(6) motion "applies to claims, not to requests for a certain type of damages that are merely the relief demanded as part of a claim." *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, No. 119CV461LMBTCB, 2020 WL 1867939, at *5 (E.D. Va. Apr. 14, 2020) (quoting *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1293 (S.D. Fla. 2015)); *see Johnston v. Speedway, LLC*, No. 7:21CV00100, 2021 WL 1662725, at *4 (W.D. Va. Apr. 28, 2021) (noting that "[t]his court has previously concluded that a Rule 12(b)(6) motion is not the proper mechanism to challenge

(or dismiss) a plaintiff's request for a particular remedy"). *But see Aarow Elec. Sols. v. Tricore Sys., LLC*, No. CV JKB-22-2363, 2024 WL 1443743, at *4 n.2 (D. Md. Apr. 3, 2024) (noting a "theme" in its analysis of Fourth Circuit cases that "the dismissal of a punitive damages request is appropriate where the claim upon which that request is premised has been dismissed or where the claim cannot support a request for punitive damages").

Accordingly, the court will deny the Motion as to Plaintiff's damages demand.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motion, construed as a motion to dismiss, shall be denied.[9]

February 2, 2026                                              /s/
                                                                     Julie R. Rubin
                                                                     United States District Judge

---

[9] In Defendant's reply, he argues for the first time that, should the court deny the Motion, the court should exercise its discretion under Rule 26 and limit discovery to the issue of qualified immunity. (ECF No. 26 at pp. 2–3.) The court declines to address Defendant's new argument raised for the first time in reply. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court . . . A contrary rule runs the risk of depriving a nonmovant an opportunity to respond." (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)). After Defendant files his answer, the court will issue a scheduling order; Defendant remains free to request such relief at the appropriate time.